IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WAYNE A. DREIBELBIS, JR.,               :        No.  4:CV 05-2312
                                        :
                Plaintiff               :        Judge Jones
                                        :
        v.                              :
                                        :
TODD SCHOLTON, et al.,                  :
                                        :
                Defendants              :

## MEMORANDUM AND ORDER

### June 7, 2006

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is Defendants Todd Scholton, Mark Argiro,

Richard Osokie, and Eric Lesher's Motion to Dismiss Plaintiff's Amended

Complaint Pursuant to F.R.C.P. 12(b)(6) and for Summary Judgment Pursuant to

F.R.C.P. 56 ("the Motion")(doc. 9) filed on January 5, 2006.

For the following reasons, the Motion (doc. 9) will be granted.

**PROCEDURAL HISTORY**:

On November 7, 2005, Plaintiff Wayne A. Dreibelbis, Jr. ("Plaintiff" or

"Dreibelbis") filed a complaint (doc. 1) against Defendants Scholton, Argiro, and

Lesher.  On December 12, 2005, Plaintiff filed an amended complaint (doc. 5),

adding Defendant Ososkie as a party.  The instant Motion (doc. 9) was filed on

1

January 5, 2006.  The Motion has been fully briefed and is therefore ripe for review.

**STATEMENT OF RELEVANT FACTS**:

We initially note that we will, where necessary, view the facts and all inferences to be drawn therefrom, in the light most favorable to the nonmoving party, Plaintiff, in our analysis of the pending Motion.

On November 15, 2003, Plaintiff was attempting to take custody of his minor daughter, Mara, from her mother pursuant to court-ordered visitation. (Rec. Doc. 5 at 2).  Plaintiff alleges that the mother of the child, at some point, made false statements against Plaintiff, and, as a result, Plaintiff videotaped transfers of custody of the daughter.  (Rec. Doc. 5 at 5).

On November 15, 2003, Plaintiff alleges that the mother of the child called the police while Plaintiff was videotaping the custody transfer.  Plaintiff alleges that Officers Scholton and Argiro arrived at the scene of the custody transfer and Scholton ordered Plaintiff to "turn off the video." (Rec. Doc. 5 at 3-4).  Plaintiff alleges that Scholton, with "significant force" grabbed the videocamera out of Plaintiff's hands and "threw it approximately 15 feet onto the hood of the police car, and arrested Plaintiff for a violation of a Protection from Abuse Order."  (Rec. Doc. 5 at 4).  Plaintiff was eventually found in violation of the Protection from Abuse Order and was convicted of criminal contempt.  (Rec. Doc. 5 at 5; Rec. Doc.

11, Ex. 2).

Plaintiff alleges that while he was videotaping the custody transfer on November 15, 2003, he was thirty to thirty-five feet from the door to the daughter's mother's house, standing on the street.  (Rec. Doc. 5 at 3).  Plaintiff alleges that he made "no inappropriate or intimidating statements," and that the Defendants 'made statements revealing they had no right to force Plaintiff to cease videotaping and that their motive was to censor him for videotaping."  (Rec. Doc. 5 at 4).

On November 15, 2003, Plaintiff requested that Officers Scholton and Argiro release the videotape to him at the hearing on the Protection from Abuse violation.  Plaintiff alleges that the Defendants did not release the videotape, however Officers Argiro and Scholton told Plaintiff that they had reviewed the videotape, but would only release the videocamera, not the tape, to Plaintiff. Plaintiff alleges that thereafter he complained to Officer Argiro on November 17, 2003 about the Defendants' conduct on November 15, 2003 and their refusal to release the videotape to him. Officer Argiro allegedly told Plaintiff, "you were ordered to stop videotaping and you did not follow that order."  (Rec. Doc. 5 at 5).

On October 24, 2004, Plaintiff sent a certified letter to the State College Police Department seeking release of the videotape and threatening legal action of

the videotape was not released.  The videotape was not released to the Plaintiff.

(Rec. Doc. 5 at 5).  Plaintiff alleges that sometime between October 24, 2004 and

July 31, 2005, Officers Scholton, Ososkie and/or Argiro, with knowledge of

Plaintiff's desire to obtain the videotape, destroyed the videotape without making a

copy or informing the Plaintiff of the videotape's destruction.  Plaintiff alleges that

Officer Scholton told Plaintiff's counsel that the tape had been destroyed.

Plaintiff alleges that Officers Scholton, Ososkie and Argiro knew the videotape

contained footage relevant to the issue of whether the Plaintiff violated the

Protection from Abuse order.  Plaintiff also alleges that the videotape contained

footage that revealed Officers Scholton and Argiro's motives for forcing Plaintiff

to stop videotaping, as well as whether the Plaintiff had a reasonable basis to

videotape on November 15, 2003.  (Rec. Doc. 5 at 5-6).

On October 8, 2006, Plaintiff had another visitation scheduled, however

Plaintiff alleges that Mara's mother refused to produce the child and called the

police.  As a result, Plaintiff alleges that Officer Lesher visited Plaintiff at

Plaintiff's residence.  Plaintiff alleges that he began to videotape his conversation

with Officer Lesher and informed Officer Lesher that he was being videotaped.

Plaintiff allges that Officer Lesher informed him that he could not videotape their

conversation even though it was inside Plaintiff's house and was being done

openly, because it was a "third degree felony" to tape record using both audio and video.  (Rec. Doc. 6 at 6).

Plaintiff alleges that the seizure of the videocamera, destruction of the November 15, 2003 videotape, refusal to release the tape, and the statements that he is not permitted to videotape using both audio and video violated his First Amendment rights and were conducted in retaliation for Plaintiff's exercise of his right to videotape events in public.  Plaintiff also claims that his Fourteenth Amendment right to due process was violated when Defendants refused to release the videotape to him, because Plaintiff was denied the ability to produce the video at the trial for his Protection from Abuse order violation.  (Rec. Doc. 5 at 7).

In rendering a ruling on the instant Motion, we are first tasked to determine whether the Plaintiff's pleading is subject to dismissal under Fed. R. Civ. P. 12(b)(6).  If we determine that Plaintiff's amended complaint fails to state a claim upon which relief can be granted, our inquiry will end.  However, if we find that the amended complaint satisfies the threshold of Fed. R. Civ. P. 12(b)(6), we must determine whether summary judgment is appropriate pursuant to Fed. R. Civ. P. 56.  Because we find that the amended complaint fails to satisfy the threshold of Fed. R. Civ. Pro. 12(b)(6), it is only necessary for us to identify the Rule 12(b)(6) standard in the ensuing analysis.

**STANDARD OF REVIEW:**

In considering a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), a court must accept the veracity of a plaintiff's allegations. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990). In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), our Court of Appeals for the Third Circuit added that in considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." Furthermore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also District Council 47 v. Bradley, 795 F.2d6 310 (3d Cir. 1986).

**DISCUSSION**:

**A.**    **First Amendment Claim**

In Count I of the amended complaint, Plaintiff alleges a First Amendment retaliation claim against the Defendant Officers. To establish a First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in activity protected by

the First Amendment, (2) the government responded with retaliation[1], and (3) the

protected activity was the cause of the retaliation.  See Walker v. North Wales

Borough, 395 F. Supp. 2d 219, 228 (E.D. Pa. 2005)(citing Estate of Smith v.

Marasco, 318 F.3d 497, 512 (3d Cir. 2003)).   If a plaintiff can establish a prima

facie case for First Amendment retaliation, the burden then shifts to the defendant

to demonstrate by a preponderance of the evidence that the adverse actions would

have been taken irrespective of the plaintiff having engaged in protected activity.

Konopka, 383 F. Supp. 2d at 681-682.

In order for speech to qualify as an activity protected by the First

Amendment, "a plaintiff must show that the speech is a matter of public concern."

Ritzel v. Pennsylvania Society for the Prevention of Cruelty to Animals, 2005 U.S.

Dist. LEXIS 1904, *10 (E.D. Pa. 2005).   "Speech addresses a matter of public

concern when it can be 'fairly considered as relating to any matter of political,

social or other concern to the community."  Id. at *10-11 (quoting Pro v.

Donatucci, 81 F.3d 1283, 1288 (3d Cir. 1996).

The Defendants pointedly argue that Plaintiff's videotaping is not a

---

[1]  To establish that the government responded with retaliation, a plaintiff may
demonstrate that the "retaliatory conduct was sufficient to deter a person of ordinary firmness
from exercising his First Amendment rights."  See Konopka v. Borough of Wyoming, 383 F.
Supp. 2d 666, 681 (M.D. Pa. 2005)(Caputo, J.)(quoting Allah v. Seiverling, 229 F.3d 220, 225
(3d Cir. 2000)).

protected activity because it is not a matter of public concern, and therefore his

First Amendment retaliation claim must necessarily fail.  The Defendants argue

that Plaintiff's alleged "speech" cannot be fairly considered as having any political,

social or community import.  The Defendants further argue that Plaintiff concedes

that his alleged "speech" was a private matter, and that he filmed the events of

November 15, 2003 solely "to protect himself" from what he characterizes as a

personal custody dispute between himself and the mother of his daughter.  (Rec.

Doc. 5 at 3).

A review of the amended complaint indicates that the Plaintiff was

motivated to videotape custody transfers of his daughter because there was a severe

breakdown in trust and communication between the Plaintiff and the mother of his

daughter, and accordingly his reason for videotaping on November 15, 2003 was

of a personal nature.  Although the police were summoned to intervene on

November 15, 2003 and despite the fact that the Pennsylvania courts had issued a

Protection from Abuse order regarding the above-mentioned fractured relationship,

it is clear to this Court that a dispute over child custody or visitation is of private,

familial and personal concern.  To be sure, onlookers may have found the incident

of November 15, 2003 interesting and may have paused to watch, however the

nature of the dispute was familial, and was clearly of no political, social or

community concern.[2]  Accordingly, we hold that the Plaintiff's videotaping was not a protected activity under the First Amendment and Plaintiff has not stated a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

We find it important to note that, even assuming arguendo Plaintiff had established a retaliation claim under the First Amendment, it is our view that  the Defendant Officers would be protected from suit pursuant to the doctrine of qualified immunity.  Qualified immunity provides government officials that perform discretionary functions a shield from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  See Konopka, 383 F. Supp. 2d at 674 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "To determine whether a particular defendant is entitled to the protections of qualified immunity, the Court must first determine whether a constitutional violation has occurred." Id. (citing Doe v. Groody, 361 F.3d 232, 237 (3d Cir. 2004)).  "The Court must then determine if the constitutional right at issue was clearly established at the time of the alleged violation."  Id. (citing Groody, 361 F.3d at 237).

---

[2] Furthermore, Plaintiff fails to establish how  private conversation that took place in his home between Plaintiff and Officer Lesher, during which Officer Lesher told the Plaintiff not to videotape their conversation is protected speech under the First Amendment.  Plaintiff makes no showing that how this private conversation is "of public concern" such that it addresses a matter of political, social or community concern.

Defendants argue that the destruction of videotape recordings is not a clearly established violation of the First Amendment.  Defendants cite the case of McCormick v. City of Lawrence, 325 F. Supp. 2d 1191 (D. Kan. 2004), aff. 130 Fed. Appx. 987 (10th Cir. 2005), in which a district court held that "[i]t is not clearly established that destruction of recordings constitutes violation of the First Amendment."  Id.at 1206.  The McCormick court held that the officers who destroyed a videotape of a plaintiff who recorded a traffic stop were entitled to qualified immunity because it was not clearly established that the alleged destruction of the video recording or Officer Lesher's directive to Plaintiff not to videotape their conversation constituted a violation of the First Amendment.

As discussed above in our analysis of the Plaintiff's First Amendment retaliation claim, it is less than clear that the destruction of a videotape recording of a parental custody transfer constitutes a violation of the First Amendment. Therefore, even assuming arguendo that we held a First Amendment violation occurred, the violation would not have been so clearly established so that a reasonable person would have known the conduct constituted a First Amendment violation.  Accordingly, the Defendant Officers would be shielded from suit by qualified immunity and the Plaintiff's First Amendment retaliation claim against them would fail.

Therefore, for the foregoing reasons, Count I of the amended complaint

(doc. 5) shall be dismissed as against the Defendant Officers.

### B.    Fourteenth Amendment Claim

In Count II of the amended complaint, Plaintiff asserts a denial of access

claim under the Fourteenth Amendment against the Defendant Officers.  Denial of

access claims involve either a claim that some official action is currently

preventing the plaintiff from filing suit or "some past wrongful conduct influenced

a litigation opportunity such that the litigation 'ended poorly, or could have not

commenced, or could have produced a remedy subsequently unobtainable.'"

Konopka, 383 F. Supp. 2d at 676.  It is relevant to note that a §1983 action brought

by a plaintiff under a denial of access theory cannot be maintained unless the

underlying criminal conviction is invalidated.  See Rodriguez-Isona v. Guarini,

2005 U.S. Dist. LEXIS 25905, *6-7 (E.D. Pa. 2005)(citing Heck v. Humphrey, 512

U.S. 477, 489 (1994)).

In this action, Plaintiff seems to allege that he was injured as a result of

Officers Ascholton, Ososkie, and Argiro failing to release exculpatory evidence,

namely the videotape, to Plaintiff for use in his Protection from Abuse hearing.[3]

---

[3] Plaintiff was convicted of contempt related to the violation of the Protection from Abuse order.  (Rec. Doc. 11, Ex. B).

However, a review of the amended complaint reveals that Plaintiff has not plead that his conviction has been overturned, reversed, expunged or collaterally attacked by a writ of habeas corpus.  In fact, Plaintiff appealed his conviction to the Superior Court of Pennsylvania and the conviction was affirmed.  (Rec. Doc. 11, Exs. C and D).  Accordingly, because the underlying conviction has not been invalidated on any grounds, Plaintiff cannot establish a Fourteenth Amendment denial of access claim and Count II of the amended complaint (doc. 5) shall be dismissed as against the Defendant Officers because Plaintiff has failed to state a claim upon which relief can be granted pursuant to Fed. R. Civ. Pro. 12(b)(6).[4]

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     Defendants Todd Scholton, Mark Argiro, Richard Osokie, and Eric Lesher's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to F.R.C.P. 12(b)(6) and for Summary Judgment Pursuant to F.R.C.P. 56 (doc. 9) is GRANTED.

2.     The amended complaint is DISMISSED.

---

[4] We note that Plaintiff's argument that a constitutional violation occurred because the Defendant Officers failed to turn over potentially exculpatory evidence is unavailing.  The duty to disclose exculpatory evidence to a defendant extends only to a prosecutor.  Brady v. Maryland, 373 U.S. 83 (1963).  Moreover, even assuming arguendo that this Court found the Defendant Officers had a duty to disclose this evidence, either to a prosecutor or to the Plaintiff, the constitutional violation is anything but clear, and the Defendant Officers would be protected by the shield of qualified immunity under the same analysis discussed earlier in this Memorandum and Order.

3.      The Clerk is directed to CLOSE the file on this case.


                              <u>s/ John E.  Jones III</u>
                              John E. Jones III
                              United States District Judge